IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FILED
NOV 16 2006
IN THIS OFFICE
Clerk, U.S. District Court
Greensboro, N.C.
By................

JOHN J. SWINT
       Plaintiff, Pro-Se

Civil Action Number: **1:06CV01003**

-VS-

STEPHEN BUCKLEY, Publisher – The Times News Newspaper
MIKE LITTLE, General Manager – The Times News Newspaper
JOHNATHAN SEGAL, President, Freedom Communications Inc
SCOTT FLANDERS, Chief Executive Officer, Freedom Communications Inc
STEPHEN SCHWARZMAN, Corporate Partner & Co-Owner Freedom Inc.
                Defendants

Claim against the defendants is in both their personal and professional capacity

## JURRISDICTION

1. This Court has Jurisdiction under Statutes 28 U.S.C. 1331, 1332 and 1343(a)

2. The False Claims Act. 31 U.S.C. Sec. 3730(h) in which the plaintiff was terminated by his employers for investigating then exposing criminal acts and behavior of the defendants to the proper authorities.

3. Violation of Federally protected Civil and Constitutional Rights

4. Violations under the Sarbanes–Oxley Act of 2002.

5. Any other statute(s) not listed or known at this time.

1

# PARTIES

**PLANTIFF**
John Joseph Swint
P.O. Box 1516
Wooster, OH 44691

**DEFENDANTS**
Stephen Buckley, Publisher Times News Newspaper
707 S. Main St
Burlington, NC 27215

Mike Little, General Manager Times News Newspaper
707 S. Main St
Burlington, NC 27215

Johnathan Segal, President Freedom Communications Inc.
17666 Fitch Rd
Irvine, Ca. 92614-6022

Scott Flanders, Chief Executive Officer Freedom Communications
17666 Fitch Rd
Irvine, Ca, 92614-6022

Stephen A. Schwarzman, Corporate Partner & Co-Owner Freedom Communications
The Blackstone Group
345 Park Avenue
New York, NY 10154

**Note:** The Blackstone Group is active in the day to day operation of Freedom Comm. Inc

# COMPLAINT

Now comes the Plaintiff, pro-se and asks this Court to grant his complaint and offers the following in support of his claim that the defendants conspired together and intentionally retaliated against defendant to punish him because he exposed fraud and other illegal practices within their company. Specifically, but not limited to fabricated internal and external audits, falsified corporate statistics that at the least cause intentional over-billing of advertisers, contractors and overstates companies financial reports.

This practice of inflating the paid circulation statistics may have been ongoing for years.

2

# FACTS

1. Plaintiff was hired as the Circulation Director at the Times-News Newspaper on or about May 8th, 2006. His responsibilities were specifically, but not limited to the day-to-day operation of the circulation department, distribution of the times-news newspaper and for the accurate and certified reporting of the total paid circulation statistics that are audited by the Audit Bureau of Circulation.

2. Plaintiff reported directly to the General Manager and indirectly to the Publisher of the times-news newspaper, which is owned by both Freedom Communications in Irvine California. And The Blackstone Group in New York.

3. On or about June 6th, 2006 Plaintiff notified defendant Little that discrepancies were found in the statistic reports that directly effected the paid circulation as being inflated and or fabricated. Defendant Little stated to plaintiff that the company was aware of the problem and not to fix or make any changes. That it had been incorrect for some time and even corporate officials were aware of the inconsistencies. (See Exhibit #1)

4. On or about August 8, 2006 Plaintiff was asked by defendants Little and Buckley why the total paid circulation was declining. Plaintiff responded that it was because of those same inflated and bogus paid circulation statistics now being deleted out of the system by the plaintiff. This was being done to get the paid circulation to the true and correct number. (See Exhibit #2)

3

5. On or about August 26th, 2006 defendant Little e-mailed plaintiff requesting information on the upcoming audit that would be conducted by the Audit Bureau of Circulation. Plaintiff responded by e-mail that there appeared to be problems like he had previously stated of inflated and false reporting of the paid circulation statistics. Plaintiff at that time also notified defendant Little that if the reports and statistics were indeed inflated that he (plaintiff) would not want to certify and or sign off on the audit. And further recommended that the publisher not sign it either. Their signature was to validate the audit as being true and correct. (See Exhibit #3)

6. On or about August 27th, 2006 plaintiff met with defendants Little and Buckley to discuss the upcoming audit conducted by the Audit Bureau of Circulation. Plaintiff made both defendants aware again of the fact that the paid circulation statistics were not correct by displaying system generated reports that showed inflated paid circulation numbers that were higher then the amount of actual customers. Defendants instructed plaintiff to come up with three options to conceal the problem and to meet later that afternoon. Plaintiffs further attempts to persuade defendants to expose the problem to the auditors continued to be ignored. Plaintiff then elected to tape record any further meetings in relation to the upcoming audit. At this time a conspiracy was born to hide the discrepancies from the auditor. Defendants Little and Buckley also enlisted the plaintiff to be apart of their conspiracy.

4

7.  On or about August 27th, 2006 plaintiff and defendants Little and Buckley met

again to discuss the problem with the paid circulation statistics. Defendants again

decided not to expose the problem to the auditor but to conceal, and fabricate

reports that would conceal the problem. Plaintiff tape recorded the meeting. This

meeting was in furtherance of their conspiracy. (See Exhibit # 4 )

8.  Another meeting was held on or about September 15th, 2006 between the plaintiff

and defendant Little to discuss the progress of the audit. Plaintiff tape recorded

this meeting where it is stated by defendant Little to continue with the fabricated

reports and other documents and to ensure that the auditor did not discover the

false and inflated paid circulation numbers.  Little offers advice as to how to

deceive the auditor. Plaintiff can be heard again stating that they should have

exposed the problem to the auditor. (See Exhibit #5)

9.  All of the defendants knew, or should have known of at least the falsified

statistics reports. Plaintiff was told by defendant Little and Susan Richardson, the

accounting manager at the Times-News that each month Richardson had to

personally recalculate the monthly stats report turned in by the Circulation

Director before sending it to Corporate. Plaintiff was told this double-checking

was because a prior Director had inflated the true paid circulation statistics. And it

was also evident because the monthly corporate reports had separate sections for

the real "ABC" audit numbers and a section for the inflated circulation numbers.

(See Exhibit 6)

5

10. On or about September 22, 2006 the auditor concluded the audit but was unable to discover the problems that were now successfully concealed by defendants Buckley and Little.

11. On or about September 25th, 2006 plaintiff sent defendants Buckley and Little copies of the e-mails, partial taped conversations and transcribed copies of their meetings where they had conspired to cover up the inflated paid circulation statistics from the auditor. Plaintiff stated in his memo to the 2 defendants of the fraud that had been committed and what would Corporate officials, Audit Bureau of Circulation and the FBI think of their conspiracy, and the falsified audit results? **Note:** During this time plaintiff was off work on a doctors excuse from September 24th, 2006 to September 29th, 2006.

12. On or about September 25th, 2006 defendants Little and Buckley notified Corporate officers of plaintiffs allegations against them and sent copies of the tapes, transcripts, e-mails and other documents to Freedom Communications in Irvine California. Defendants did not notify anyone else to plaintiffs complaint.

13. At this time Defendants Segal, Flanders and Schwarzman knew or should have known that plaintiff had filed a complaint with defendants Buckley and Little in Burlington about the audit. That plaintiff alleges the true paid circulation statistics were concealed from the auditor. More so the inflated statistics were submitted to

6

the auditor at the direction of Buckley and Little. Defendants Segal, Flanders &

Schwarzman, along with others became willing participants in the furtherance of

this conspiracy because they elected to assist in the cover up started by Buckley

and Little. They did not report Plaintiffs allegations to the proper authority.

14. The defendants then elected to retaliate against the plaintiff for exposing the

problems and filing a complaint. They accomplished this by forcing his

resignation without his knowledge while he was on a doctor's excuse to be off of

work due to an injury. Plaintiff had earlier presented defendant Little with a copy

of that doctors excuse. Then on that same date the defendants covered up their

illegal termination by announcing to all of the employees that the plaintiff would

not be returning to the Times-News and not to have any contact with him.

Plaintiff contested his termination but the defendants refused to undue their act

against him.

15. On or about October 9th, 2006 plaintiff notified field auditor Tanya Reed and

Manager Craig Knudsen at the Audit Bureau of Circulations of the fabricated

reports and the cover up to deceive auditor Reed when she was onsite in

Burlington conducting the audit. (See Exhibit #7)

16. On or about October 18, 2006 plaintiff sent a request and affidavit to the FBI in

Charlotte North Carolina and Los Angeles California and requested them to

investigate the alleged cover up and fraudulent acts during the audit. Plaintiff also

7

sent the same information to the U.S. Postal Services, Criminal Investigations in Charlotte North Carolina since the U.S. Mail was used in their crimes.

17. On or about November 2nd, 2006 defendant Buckley continued to retaliate against plaintiff by intentionally causing, or personally writing and publishing a story in the Times-News newspaper about plaintiffs criminal past and for being a whistle blower. Defendants only objective was to use his position and authority as the publisher to further punish the plaintiff for exposing defendant Buckley and others to the fabricated audit and inflated paid circulation statistics.

18. Defendant Buckley knew, or should have known his actions publishing the story would also be sent out to at least the Associated Press wire service to all media companies across the nation. Buckley intent for distributing that story was to further cause plaintiff pain and suffering by being "blackballed" in at least the news media industry from ever being employed again.

19. Plaintiff attempted on numerous occasions to persuade and convince at least defendants Little and Buckley to correct the inflated and falsified paid circulation statistics. Plaintiff also gave defendants every possible opportunity to correct the problem before his reporting the falsified statistics to an outside agency. Specifically but not limited to the Audit Bureau of Circulation, the FBI and Postal Inspectors.

8

20. Defendant's acts have intentionally caused the paid circulation statistics to be inflated. Which also directly reflects their companies profit since these numbers generate revenue both in the rates charged to customers, the independent contractors and to the advertisers. Which falsifies the company's true financial affidavits, reports and true net worth. Its not known by this plaintiff how many years this has been going on.

21. Defendants personally retaliate against the plaintiff using their authority and position within the company to do be able to do so.

## SUMMARY

The defendants knowingly, willfully and intentionally retaliated against the plaintiff by first terminating his employment at the Times-News newspaper, and cloaked this illegal act by claiming to everyone the plaintiff resigned. And instructed the remaining employees not to talk with the plaintiff and that he would not be returning to work at the Times-News.

Then defendant Buckley furthered their acts against the plaintiff by causing, or writing and publishing a story about the plaintiff in the newspaper. Then caused the article to go out on at least the Associated Press wire service in confidence that other media agencies would publish the story as well across the country. There is no reason or purpose other then retaliation and punishment to have published such a story other then to intentionally ruin plaintiffs ability to ever get a job.

9

All of the defendants knew, or should have known that the circulation statistics were false and all refused to correct the problem or allow the plaintiff to make corrections. Instead, they all became co-conspirators to conceal the truth. These inflated statistics not only have caused the Audit Bureau of Circulation audit to report false numbers to the advertisers, but also caused inflated invoices to be mailed out to those advertisers; and to the independent contractors who pay for those newspaper. In addition, these acts cause corporate financial reports and other legal records directly related to the Times-News newspaper and Freedom Communications to be tainted.

Defendants knowingly, willfully and intentionally conspired and violated plaintiffs rights as protected by statute and law. All in retaliation for plaintiff exposing them as outlined above. Defendants personally sought to punish the plaintiff and used their power, authority and position within the company to do so.

### RELEIF SOUGHT

1.  Plaintiff seeks this court to make him whole.

2.  Plaintiff seeks his job back with double the amount of lost wages.

3.  Plaintiff seeks additional monetary damages in the amount of $1,300.000 (One Million Three Hundred Thousand) for loss wages from now and in the future for defendants intentional ploy to cause plaintiff to never be employed in at least the newspaper industry as outlined in the Facts and Summary of this complaint.

4.  Plaintiff seeks punitive damages in the amount of $20,000.000 (Twenty Million Dollars) for their known, willful and intentional acts against the plaintiff.

10

5. Any and all other remedies and or injunctions afforded by this court.

6. Plaintiff demands a Jury Trial

7. That plaintiff be allowed to proceed against the defendants in their personal and professional capacity.

**Exhibits Attached:  1 thru 7**

I John Joseph Swint do attest this _13 th_ day of November 2006 that the information, facts and claims in this complaint are true and correct to the best of my knowledge and belief.

John Joseph Swint

P.O. Box 1516   Wooster, Ohio    44691

330- 749-8509    330- 201-0388

11